UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA,

    Plaintiff,

v.

HERMAN A. WESSELMAN, MILLIE WESSELMAN, KENNETH CAYO, Agent of the Trustee(s) of the Bounteous Harvest Trust and the Salvation Rock Trust, DAVID WESSELMAN, Agent of the Trustee(s) of the Bounteous Harvest Trust and the Salvation Rock Trust, WILLIAM BRIAN PATRICK DOWLING, Trustee of the J.A.W. Homestead Trust, FREDERICK V. WEDEMEIER, Agent of Trustee(s) of the Steward of the Lord Trust, VIRGIL STRAUCH, Agent Trustees of the Steward of the Lord Trust, ILLINOIS DEPARTMENT OF REVENUE, JOHN DOE 1, Trustee of the Bounteous Harvest Trust, JOHN DOE 2, Trustee of Salvation Rock Trust, JOHN DOE 3, Trustee of J.A.W. Homestead Trust, JOHN DOE 4, Trustee of Steward of the Lord Trust, BOUNTEOUS HARVEST TRUST, SALVATION ROCK TRUST, J.A.W. HOMESTEAD TRUST and STEWARD OF THE LORD TRUST,

    Defendants.

Case No. 05-cv-4152-JPG

## MEMORANDUM AND ORDER

This matter comes before the Court on the second motion of the plaintiff United States of America for summary judgment (Doc. 151). The United States seeks summary judgment against defendant Herman A. Wesselman ("Taxpayer") on Count II, a claim for foreclosure of properties allegedly owned by the Taxpayer. The Taxpayer has responded to the motion (Doc. 152),[1] and

---

[1] Ordinarily, a *pro se* litigant is entitled to a plainly-worded notice of the consequences of failing to respond to a motion for summary judgment. *Timms v. Frank*, 953 F.2d 281, 285 (7th Cir. 1992); *see Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982). Neither the United States' summary judgment motion nor the brief in support of that motion explained to the Taxpayer, who is proceeding *pro se*, the consequences of failing to respond adequately to the motion. Nevertheless, the Taxpayer was given such notice (Doc. 102) in conjunction with the United

the United States has replied to that response (Doc. 153).

**I.      Background**

On August 18, 2005, the United States filed this suit under 26 U.S.C. § 7403 to collect allegedly unpaid federal taxes.  On August 5, 2008, the Court entered judgment on Count I in favor of the United States in the amount of $1,769,148.31, plus penalties and interest that continue to accrue after June 25, 2008, for unpaid and previously assessed federal income taxes, federal employment taxes, and federal unemployment taxes from the 1991, 1992, 1993, 1994, 1995, 1996, 1997, and 2000 tax periods.

The United States now seeks to collect that judgment through foreclose on two properties:

> 906 S. Cherry St.                    505 Clinton
> Effingham, Illinois                  Effingham, Illinois

The Taxpayer used to own these properties but, at some point after the Internal Revenue Service ("IRS") began an audit of the Taxpayer's finances in 1993, purported to transfer in a series of transactions the Cherry Street property to the Bounteous Harvest Trust and the Clinton property to the Salvation Rock Trust.  The United States believes the trusts are mere nominees of the Taxpayer, who continues to control and enjoy the properties.

In response, the Taxpayer argues that a refund from his 2007 tax return should be applied to offset his entire liability in this case and that foreclosure is therefore not appropriate in light of the fact that all liens against his property have been satisfied.  Notably, he does not contest that

---

States' first motion for summary judgment.  That notice was sufficient to alert him to the consequences of failing to respond adequately to a summary judgment motion, and no further notice was necessary in conjunction with the United States' second summary judgment motion.

the Bounteous Harvest Trust and the Salvation Rock Trust are his nominees.

## II.     Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Spath*, 211 F.3d at 396.

Where the defendant is the moving party and does not have the burden of proving the claim at trial, its motion need not negate an element of the plaintiff's case. *Celotex*, 477 U.S. at 323. It is sufficient if the motion points to the absence of evidence in support of a critical element of the plaintiff's case. *Id.* The plaintiff must then present evidence from which a reasonable factfinder could find it can establish that critical element. *Id.* at 323-24.

However, where the plaintiff is the moving party and bears the burden of proving the claim at trial, as in this case, it must affirmatively establish that no reasonable factfinder could fail to find in its favor and that it is entitled to judgment. *See Anderson*, 477 U.S. at 252 ("[T]he inquiry involved in a ruling on a motion for summary judgment . . . necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits."); *Firemen's Fund Ins. Co. v. Thien*, 8 F.3d 1307, 1310 (8th Cir. 1993); 11 James Wm. Moore, *et al.*, *Moores Federal Practice* § 56.11[1][b] (3d ed. 2010). The defendant must then present conflicting evidence or show that the moving party's evidence is insufficient to establish its

entitlement to judgment. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991).

**III.    Facts**

In 1979, the Taxpayer acquired sole ownership of the Clinton property. In 1988, the Taxpayer and Millie Wesselman, his wife, became joint owners of the Cherry Street property, where they lived. In April 1994, shortly after the IRS began an audit of the Taxpayer's financial dealings in 1993, the Taxpayer and Millie transferred the properties to the East Gate Trust. The respective deeds state that the consideration for transfer of the Cherry Street property was the extinguishment of a $95,000 debt and for transfer of the Clinton property was the extinguishment of a $42,000 debt, both debts having arisen from prior mortgage loans from the East Gate Trust. Neville Solomon signed the deeds as trustee of the East Gate Trust. Solomon was a preacher of the Believer's Fellowship Church, and encouraged the Taxpayer and other parishioners of the church not to pay federal income taxes.[2] No real estate transfer tax stamps were affixed to the instrument of conveyance.

In March 1995, the East Gate Trust transferred the Cherry Street property to the New Republic Trust #3194 in exchange for a silver coin plus either $90,537 or some quantity of "Type III Federal Reserve Notes." The Clinton property was similarly conveyed for a silver coin

---

[2] In her unverified answer (Doc. 21) to the United States' complaint, Millie Wesselman alleges that, at the time, the Taxpayer pressured her to sign the deed for the Cherry Street property and told her that she would still own the property regardless of what the deed said and that the documents needed to be signed to protect the property from the government. However, Millie Wesselman's pleading is not verified, so it does not satisfy the requirements of Federal Rule of Civil Procedure 56(e)(1). Therefore, it is not competent evidence in support of a summary judgment motion against the Taxpayer. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); 11 James Wm. Moore, *et al.*, *Moores Federal Practice* § 56.14[1][a] (3d ed. 2010).

plus either $32,655 or some quantity of "Type III Federal Reserve Notes." Pat Niemeyer signed the deeds as trustee of the East Gate Trust, and with respect to the Clinton Property, John F. Koester signed the deed as trustee of the New Republic Trust #3194. Niemeyer and Koester were parishioners at the Believer's Fellowship Church. Koester is married to the Taxpayer's sister. The Cherry Street property and Clinton property deeds have $91 and $33 worth of real estate transfer stamps affixed to them, respectively.

In October 1995, the New Republic Trust #3194 transferred the Cherry Street property to the Bounteous Harvest Trust and the Clinton property to the Salvation Rock Trust, each in consideration of three silver coins, $21 or some quantity of "Type III Federal Reserve Notes." Koester signed both deeds as trustee of the New Republic Trust; Kenneth Cayo signed the respective deeds as agent of the trustee of the Bounteous Harvest Trust and of the trustee of the Salvation Rock Trust. The mailing address of the Salvation Rock Trust is the Cherry Street property, and the Taxpayer has received mail care of the Salvation Rock Trust at that address. The Cherry Street property and Clinton property deeds have $91 and $33 worth of real estate transfer stamps affixed to them, respectively.

Throughout the series of transfers, the Taxpayer and Millie continued to occupy the Cherry Street property as their home.

In August 1995, March 1996, August 1999 and September 2004, the IRS made assessments against the Taxpayer for income, employment or unemployment tax liability plus interest to that date. On August 5, 2008, those assessments were reduced to judgment in the amount of $1,769,148.31 plus penalties and interest that continued to accrue after June 25, 2008.

IV.     Analysis

The critical question in this case is whether the Cherry Street property and the Clinton property are the Taxpayer's property to which federal tax liens attached under I.R.C. § 6321, 29 U.S.C. § 6321.[3] Under § 6321, the United States may impose a lien on any of a taxpayer's property or right to property to satisfy a tax deficiency. *See Drye v. United States*, 528 U.S. 49, 55 (1999). Generally, the lien arises at the time of the tax assessment and continues until the assessment, or a judgment arising from the assessment, is satisfied or expires. *See* I.R.C. § 6322, 26 U.S.C. § 6322. Congress worded § 6321 broadly, intending it to reach "every interest in property that a taxpayer might have." *United States v. National Bank of Commerce*, 472 U.S. 713, 719-720 (1985), *cited in Drye*, 528 U.S. at 56.

A federal tax lien attaches to property owned or subsequently acquired by a taxpayer. *United States v. Swan*, 467 F.3d 655, 656 (7th Cir. 2006). However, it does not attach to property a taxpayer formerly owned and previously transferred to another unless the entity to whom the property was transferred is the taxpayer's alter ego or a nominee. *See Swan*, 467 F.3d at 658; *Sumpter v. United States*, 302 F. Supp. 2d 707, 720 (E.D. Mich. 2004); *see, e.g., G.M. Leasing Corp. v. United States*, 429 U.S. 338, 351 (1977). The United States can enforce a lien

---

[3]That provision states:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

26 U.S.C.A. § 6321.

against property owned by a taxpayer's nominee. *See Macklin v. United* States, 300 F.3d 814, 818 n. 2 (7th Cir. 2002); *Sumpter*, 302 F. Supp. 2d at 720; *see, e.g., United States v. Kitsos*, 770 F. Supp. 1230, 1236-37 (N.D. Ill. 1991).

"A 'nominee' is a person or entity who holds legal title to property that in truth belongs to another who exercises control over and realizes the benefit of it." *Sumpter*, 302 F. Supp. 2d at 720. To determine whether a property owner is really a taxpayer's nominee, the Court must examine the degree of control the taxpayer exercises over the property. *Sumpter*, 302 F. Supp. 2d at 720; *see Drye*, 528 U.S. at 61 (citing *Morgan v. Commissioner*, 309 U.S. 78, 83 (1940)) (breadth of taxpayer's control over property is most important consideration in determining whether property is subject to foreclosure). The purpose of the inquiry is "to discern whether a taxpayer has engaged in a sort of legal fiction, for federal tax purposes, by placing legal title to property in the hands of another [person or entity] while, in actuality, retaining all or some of the benefits of being the true owner." *In re Richards*, 231 B.R. 571, 578 (E.D. Pa. 1999), *quoted in Sumpter*, 302 F. Supp. 2d at 721. Some courts have listed several factors the Court should consider in making the judgment whether an owner is a taxpayer's nominee:

> (1) whether inadequate or no consideration was paid by the nominee; (2) whether the property was placed in the nominee's name in anticipation of a lawsuit or other liability while the transferor remains in control of the property; (3) whether there is a close relationship between the nominee and the transferor; (4) whether they failed to record the conveyance; (5) whether the transferor retains possession; and (6) whether the transferor continues to enjoy the benefits of the transferred property.

*Sumpter*, 302 F. Supp. 2d at 721 (quotations omitted). The United States bears the burden of proving by a preponderance of the evidence that it is entitled to foreclose on property owned by a nominee. *United States v. Northern States Invs., Inc.*, 670 F. Supp. 2d 778, 785 (N.D. Ill.

7

2009).

In this case, the United States has the burden of proving that a reasonable factfinder must find in its favor. The United States argues that the following facts entitled them to judgment as a matter of law, that is, that they conclusively establish the Bounteous Harvest Trust and the Salvation Rock Trust are the Taxpayer's nominees: (1) the Taxpayer and Millie continue to reside at the Cherry Street property, (2) mortgage or loan documents typically found in connection with real estate transfers were not recorded, (3) language in the transfer documents, particularly the description of the consideration, is legally nonsensical, (4) those executing the transfer documents were part of the Taxpayer's tax protester group and (5) the trusts involved in the property transfers do not appear to exist as legally recognized entities. Wesselman's response is absurd and adds nothing of substance to the briefing.

Based on the evidence in the record, no reasonable factfinder could find that Bounteous Harvest Trust and the Salvation Rock Trust are not the Taxpayer's nominees. It is clear that the Taxpayer and his wife retain the use and enjoyment over the Cherry Street property, now part of the Bounteous Harvest Trust, because they still live there. There is no evidence in the record from which a reasonable factfinder could infer that they pay any rent or any other thing of value in exchange for the right to live on the property. The supposed consideration paid by the East Gate Trust when it originally acquired title to the Cherry Street and Clinton properties was the extinguishment of mortgages, but there is no evidence from which a reasonable factfinder could infer that the mortgages actually existed. Nor is there evidence that the East Gate Trust, or any other trusts in the chains of title to the Cherry Street or Clinton properties, actually existed as anything more than a fictional entity to act as a cat's paw for the Taxpayer to avoid paying

federal income taxes, which at the time of the original transfers he knew the IRS was investigating. Indeed, the Taxpayer received personal mail care of the Salvation Rock Trust at the Cherry Street address. Nor is there evidence that the subsequent transfers of the Cherry Street and Clinton properties were made for consideration that was more than nominal. The cryptic language in the deeds suggests a few coins or $21, a paltry sum, were paid for each. It is true that the conveyances were recorded and bore tax stamps, but such indicia of a bona fide transaction, in the context of the transactions considered as a whole, are not enough for a reasonable factfinder to conclude that the transaction were legitimate. That the trusts' trustees or agents of those trustees were congregants, along with the Taxpayer, of a church that encouraged its members to avoid paying federal income taxes lends further support to the conclusion that the multiple transfers of the Cherry Street and Clinton properties were to nominees of the Taxpayer. While there is nothing presumptively fishy about transactions between friends or relatives, *see Swan*, 467 F.3d at 658, in the circumstances of this case, the transactions are suspect. Furthermore, there is simply no substantial evidence in the record showing that the Bounteous Harvest Trust and the Salvation Rock Trust are anything other than nominees of the Taxpayer.

In light of the evidence presented, a reasonable factfinder could only find the Bounteous Harvest Trust and the Salvation Rock Trust are the Taxpayer's nominees. Therefore, the United States is entitled to summary judgment.

## VI.  Conclusion

For the foregoing reasons, the Court

- **GRANTS** the motion for summary judgment (Doc. 151) on the remaining portions of Count II-B;

- **DISMISSES** the remaining portions of Count II-A **as moot** in light of the Court's ruling

on Count II-B;

- **DECLARES** that the United States has valid and subsisting tax liens, by virtue of prior tax assessments against the Taxpayer, on all property and rights to property of the Taxpayer, both real and personal, tangible and intangible, including his interest in the following real properties:

    906 S. Cherry St.
    Effingham, Illinois

    More fully described as: Lots Six (6) and Seven (7) in Block Ten (10) in Robe's Addition "B" to Western Addition to the City of Effingham.;

    and

    505 Clinton
    Effingham, Illinois

    More fully described as: Lot Two (2) and Part of Lot One (1) of N.T. Catterlin's Subdivision of Block 25, Addition "A" to Western Addition to Effingham, more particularly described as follows: Beginning at a point 75 feet West of the Northeast corner of said Block 25, on the North line of said Block, thence West 57 feet, thence South to the North line of the Pennsylvania Railroad Company's Right-of-Way to a point 75 feet West of the Southeast corner of said Block 25, thence North to the point of beginning.

- **DECLARES** that any interest held by either the East Gate Trust, the New Republic Trust #3194, the Bounteous Harvest Trust or the Salvation Rock Trust in the aforementioned real property is held as a nominee of the Taxpayer subject to the federal tax liens in favor of the United States of America; and

- **ORDERS** that the parties shall have up to and including May 7, 2010, to file a notice suggesting the procedures to be followed to accomplish foreclosure of the tax liens, the subsequent judicial sale and the distribution of the proceeds of that sale. The Court strongly suggests the United States consult the United States Attorney for the Southern District of Illinois regarding the Court's preferences in foreclosure proceedings.

**IT IS SO ORDERED.**
**DATED: April 22, 2010**

                                                              s/ J. Phil Gilbert
                                                              **J. PHIL GILBERT**
                                                              **DISTRICT JUDGE**